## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY HUDSON and THOMAS EARL JACKSON, JR., *as Temporary Guardians of Kendric Jackson, an Incapacitated person*,<br>     Plaintiffs,<br><br>v.<br><br>ILLINOIS CENTRAL RAILROAD COMPANY, *et al.*,<br>     Defendants. | CIVIL ACTION NO. 1:17-00424-KD-N |

## REPORT AND RECOMMENDATION

This matter is before the Court on the Motion to Remand and Memorandum in Support filed by Plaintiffs Kimberly Hudson and Thomas Earl Jackson, Jr., as Temporary Guardians of Kendric Jackson ("Plaintiffs"). (Doc. 14, 14-1). This motion has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and S.D. Ala. GenLR 72(b). In reaching its decision, the Court considers the Notice of Removal (Doc. 1); the Motion to Remand and Memorandum in Support (Docs. 14-14-1); the Response in Opposition (Doc. 17) filed by Defendants Illinois Central Railroad Company and David W. Myers (collectively "Defendants" or "Removing Defendants"); Plaintiffs' Response to Defendants' Opposition (Doc. 14); and related exhibits. Upon consideration, and for the reasons stated herein, the undersigned **RECOMMENDS** that the Motion to Remand be **DENIED.**

## BACKGROUND

On May 2, 2017, Plaintiffs Hudson and Jackson, filed this action in the Circuit Court of Mobile County, Alabama on behalf of their minor son Kendric Jackson ("Jackson"), against Defendants Canadian National Railway Company, Mississippi Export Railroad, Illinois Central Railroad Company, Illinois Central Corporation, Grand Trunk Corporation, David W. Myers, and Diamante Lockhart. (Doc. 1, Mobile County Circuit Court Civil Action No. CV-2017-901162.00).

On February 3, 2017, there was a collision involving a train and a vehicle in which Jackson was a passenger. As a result of the accident, Plaintiffs allege that Jackson sustained serious, incapacitating injuries, including severe traumatic brain injury. Plaintiffs demand compensatory and punitive damages.

Plaintiffs allege that Defendant Diamante Lockhart ("Lockhart") was driving the vehicle at the time of the collision, and that he was negligent for failing to keep a proper lookout. Plaintiffs allege that Defendant Myers' ("Myers") negligent and willful actions in operating the train proximately caused the accident. Plaintiffs further allege that the negligent or willful actions or inactions of one or more of the named railroad entities proximately caused the accident.

On September 20, 2017, Defendants joined in timely removal of this case. (Doc. 1).[1] In the Notice of Removal, Defendants argue that Lockhart, the driver of

---

[1] Defendant Myers was served September 6, 2017. Under the last served defendant rule, Defendants had 30 days from this date to file a timely notice of removal. *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202 (11th Cir. 2008).

the vehicle, was fraudulently joined in order to defeat the presence of diversity jurisdiction under 28 U.S.C. § 1332. As grounds, Defendants explain that both Plaintiffs and Lockhart are citizens of Alabama, and that there is no possibility that Plaintiffs can succeed on their one claim for negligence against Lockhart. If Lockhart was not named as a Defendant, there would be complete diversity of citizenship between the parties as none of the remaining Defendants (Illinois Central Railroad Company, Illinois Central Corporation, Canadian National Railway Company, Grand Trunk Corporation, or Myers) are citizens of Alabama. Plaintiffs timely filed a motion to remand, arguing that Lockhart was not fraudulently joined, that the parties are not completely diverse, and that remand is proper as a result. (Doc. 14).

## ANALYSIS

### A.   Jurisdictional Requirements

Defendants predicate federal subject matter jurisdiction solely on the diversity provisions of 28 U.S.C. § 1332. That section confers original jurisdiction on federal district courts to entertain civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. *See e.g., Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010) ("For federal diversity jurisdiction to attach, all parties must be completely diverse … and the amount in controversy must exceed $75,000.") (citations omitted). The Eleventh Circuit has instructed that "[i]n light of the federalism and separation of powers concerns implicated by diversity jurisdiction,

federal courts are obligated ... to scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (citations omitted). A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must demonstrate the existence of federal jurisdiction. *See, e.g., Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("the burden of establishing removal jurisdiction rests with the defendant seeking removal"); *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). This burden applies with equal force in the context of a motion to remand. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009) ("On a motion to remand, the removing party bears the burden of showing the existence of federal subject matter jurisdiction."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts resolved in favor of remanding the action to state court. *See, e.g., Scimone,* 720 F.3d at 882 ("we strictly construe the right to remove and apply a general presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand") (citation and internal marks omitted).

### 1.    Amount in Controversy

The parties do not dispute that the amount in controversy requirement has been met, and the Court's review of the Complaint leads to the same conclusion. Defendants' removal was pursuant to 28 U.S.C. § 1446(b)(1), *i.e.* a "first paragraph removal." (Doc. 1 at 4). The Complaint does not include a specific damages demand. In *Roe v. Michelin North America, Inc.*, the Court of Appeals for the Eleventh Circuit summarized its precedent with regard to first paragraph cases in which the plaintiff does not make a specific damages demand as follows:

> If a plaintiff makes "an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the ... jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir.1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000). In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper. *See, e.g., Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744 (11th Cir.2010). In other cases, however, it may be "facially apparent" from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when "the complaint does not claim a specific amount of damages." *See id.* at 754 (quoting *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir.2001)).

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Id.* at 771. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").

Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint ... establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.,* 637 F.Supp.2d 995, 999 (M.D.Ala.2009)); *see also Williams,* 269 F.3d at 1319 (11th Cir.2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements. This approach is consistent with those of other circuits.

613 F.3d 1058, 1061–62 (11th Cir. 2010)(footnotes omitted). As Defendants indicate in the Notice of Removal (Doc. 1), the Complaint alleges that Jackson suffered a fractured femur, fractured clavicle, collapsed lung, multiple facial fractures, a severe traumatic brain injury, and requires a tracheotomy. Jackson was and remains incapacitated as a result of the collision. The Complaint seeks compensatory damages, including past and future medical expenses, as well as punitive damages. Upon consideration of the severity of the injuries sustained and the types of damages requested, the undersigned finds that it is facially apparent from the Complaint that the amount in controversy is met.[2]

---

[2] *See also e.g. Co. Prop. & Cas. Ins. Co. v. Metal Roofing Sys.,* 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013)( "The state-court complaint alleges that [Plaintiff] suffered a traumatic brain injury, an injury that left him permanently disabled and incapable of representing his own interests in the underlying litigation. That the monetary relief sought will likely exceed $75,000 does not require the Court's speculation. A reasonable inference can be made that the damages at issue in the underlying action will indeed exceed the amount-in-controversy threshold.").

### 2. Diversity of Citizenship

As the amount in controversy requirement has been satisfied, the undersigned focuses on whether the parties are completely diverse. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)(As a general proposition, "[d]iversity jurisdiction requires complete diversity between named plaintiffs and defendants."). The Complaint alleges that both the Plaintiff and Lockhart are both citizens of Alabama. On its face, then, the pleading does not satisfy the complete diversity prerequisite for § 1332 jurisdiction. Nonetheless, Defendants argue that complete diversity is present here pursuant to principles of fraudulent joinder.

In response, Plaintiffs argue that Lockhart was not fraudulently joined. As a result, complete diversity between plaintiffs and defendants is not present, § 1332 jurisdiction does not exist, removal was improper. However, if Lockhart was fraudulently joined, then his citizenship is disregarded for diversity purposes and federal removal jurisdiction properly lies.

### a. Fraudulent Joinder

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)(internal citations

omitted). The Court of Appeals has also identified a third type of fraudulent joinder "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Id*. This case concerns only the first type of fraudulent joinder.

The Eleventh Circuit has explained that "the determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(b). In such a proceeding, the district court must resolve all questions of fact ... in favor of the plaintiff." *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005)(internal quotations, citations, and emphases omitted).

To establish fraudulent joinder, "the removing party has the burden of proving [by clear and convincing evidence] that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez*, 139 F.3d at 1380. "If there is even a possibility that a state court would find that *the complaint states* a cause of action against ... the resident defendant [ ], the federal

court must find that the joinder was proper and remand the case to the state court." *Stillwell*, 663 F.3d at 1333 (citations omitted, emphasis added). "The standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient: federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law…." *Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x. 844, 846 (11th Cir. 2013)(citing *Stillwell* at 1333)(internal citations and quotations omitted).

Significantly, the fraudulent joinder standard differs from, and is less stringent than, the *Twombly/Iqbal* "plausibility" test that governs motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Kimball v. Better Business Bureau of West Florida*, 613 F. App'x. 821, 823 (11th Cir. 2015) ("Notably, the standard for assessing fraudulent joinder differs from the one used for Rule 12(b)(6) motions to dismiss [.]"). Whereas the *Twombly* test "asks for more than a sheer possibility that a defendant has acted unlawfully, … all that is required to defeat a fraudulent joinder claim is a possibility of stating a valid cause of action." *Stillwell*, 663 F.3d at 1333 (citations omitted). Unlike the plausibility test that governs Rule 12(b)(6) motions in federal court, the Eleventh Circuit utilizes a possibility test for fraudulent joinder that incorporates pleading standards applicable in state court. *See Stillwell*, 663 F.3d at 1334 ("To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the

plausibility pleading standards prevailing in federal court."); *See also Hunt v. Nationstar Mortg., LLC*, 684 F. App'x. 938, 942 (11th Cir. 2017) (similar).

Under Alabama law, "dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief." *Stovall v. Universal Const. Co.*, 893 So.2d 1090, 1101 (Ala. 2004) (citations omitted); *see also Ex parte Austal USA, LLC*, ⸺ So.3d ⸺⸺, 2017 WL 836567, *5 (Ala. Mar. 3, 2017) ("a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief") (citation and internal quotation marks omitted); *Mooneyham v. State Bd. of Chiropractic Examiners*, 802 So.2d 200, 203 (Ala. 2001) ("[m]otions to dismiss under Rule 12(b)(6) should be granted sparingly") (citation omitted). Thus, Alabama law provides that "[t]he dismissal of a complaint is not proper if the pleading contains even a generalized statement of facts which will support a claim for relief." *McKelvin v. Smith*, 85 So.3d 386, 389 (Ala. Civ. App. 2010) (citations and internal quotation marks omitted). The fraudulent joinder analysis in this case proceeds in recognition of that legal standard.

As the Court is required to consider "the pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties," the undersigned begins with the Complaint (Doc. 1-1 at 2-11), which alleges a single cause of action against Lockhart for negligence in failing to keep a proper lookout while operating the vehicle at the time of the accident. *Legg* 428 F.3d

at 1322–23. Defendants base the propriety of removal on their position that the Alabama Guest Statute (Ala. Code. § 32-1-2) bars the negligence claim against Lockhart. As a result, Defendants argue that there is no possibility of recovery against Lockhart, rendering him fraudulently joined. The Alabama Guest Statute provides:

> The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, *unless such injuries or death are caused by the willful or wanton misconduct* of such operator, owner, or person responsible for the operation of the motor vehicle.

Ala. Code § 32-1-2 (emphasis added). The first inquiry is whether Jackson was a "guest," as contemplated by the statute.

In a recent Alabama Supreme Court case concerning the Alabama Guest Statute, the Court explained, that the term "guest" is not defined in the statute, but the Alabama Supreme Court has held:

> The general rule is that if the transportation of a rider confers a benefit only on the person to whom the ride is given, and no benefits other than such as are incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a guest; but if his carriage tends to promote the mutual interest of both [the rider] and driver for their common benefit, thus creating a joint business relationship between the motorist and his rider, or if the rider accompanies the driver at the instance of the driver for the purpose of having the rider render a benefit or service to the driver on a trip that is primarily for the attainment of some objective of the driver, the rider is a 'passenger for hire' and not a guest.

*Hurst v. Sneed*, 2017 WL 461483, at *2 (Ala. 2017). The Alabama Supreme Court explained further:

The general rule regarding whether a rider in a vehicle is considered a "guest" or a "passenger for hire" for purposes of the Alabama Guest Statute, has three components: (1) if the transportation of a rider confers a benefit only on the rider, and no benefits, other than such as are incidental to hospitality, good will, or the like, on the driver, the rider is a guest; (2) if the transportation tends to promote the mutual interest of both the rider and the driver for their common benefit, thus creating a joint business relationship between the motorist and his or her rider, the rider is a "passenger for hire" and not a "guest"; and (3) if the rider accompanies the driver at the instance of the driver for the purpose of having the rider confer a benefit or service to the driver on a trip the primary objective of which is to benefit the driver, the rider is a "passenger for hire" and not a "guest."

*Id.* at *3 (internal citation omitted). In support of Jackson's "guest" status in Lockhart's car, Defendants cite Lockhart's affidavit stating:

Kendric Jackson was a passenger in my car at the time of the accident. Kendric was a close friend, and we were headed up to the mall to hang out together before meeting up with school friends for dinner. We had no goal other than to have a fun time with friends. We had no work-related or business purpose, and Kendric was not riding with me to provide any kind of service to help me with any task. Kendric did not pay me any money. I received nothing in return for giving Kendric a ride except companionship.

(Doc. 1-2 at 1-2; Lockhart Affidavit). Importantly, Plaintiffs have not disputed Jackson's "guest" status or the applicability of the statute to their negligence claim. (Doc. 14-1 at 8 ("Thus, based upon the Guest Passenger Statute, Lockhart can be held liable for his actions, and is properly joined as a party in this suit, if Lockhart's actions rise to the level of wantonness."). Based on the foregoing, at appears that Jackson qualifies as a "guest" under the first component of the test set forth in the *Hurst* decision.

Defendants argue that in light of the Alabama Guest Statute, because the Complaint alleges only negligence against Lockhart, Plaintiffs have "no possibility

of succeeding on their claim against Lockhart for negligence, and he was fraudulently joined. Therefore, his citizenship should he disregarded for purposes of this removal." (Doc. 1 at 10-11). Plaintiffs admit that their complaint contains only a negligence claim against Lockhart.

As Plaintiffs indicate in their brief in support of the motion to remand, the Alabama Supreme Court has explained that, "[w]antonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tolbert v. Tolbert*, 903 So.2d 103, 114 (Ala. 2004) (quotation marks and citations omitted). (Doc. 14-1 at 8-9). A claim for negligence is not the same as a claim for wantonness. Plaintiffs admit that the Complaint does not contain a claim for wantonness against Lockhart but argue that "evidence obtained in this case, which, is indisputably in its infancy, is sufficient to give rise to a claim for wantonness, and such evidence can properly serve as the basis of a remand." (Doc. 14-1 at 9). In other words, even though Plaintiffs did not allege a claim for wantonness against Lockhart in the complaint, because there is a possibility that they could have and/or might allege such a claim, Lockhart was not fraudulently joined. Though Plaintiffs may have developed evidence in support of a claim for wantonness against Lockhart, this is not what was alleged in the Complaint. Plaintiffs cannot now, for purposes of avoiding being subject to federal jurisdiction, avoid removal based on a claim or theory of liability not alleged in the Complaint.

Plaintiffs appear to concede that their negligence claim against Lockhart is due to fail. Effectively, Plaintiffs ask the Court to make a determination regarding the possibility of success on a claim not alleged in the Complaint. "In order to escape fraudulent joinder, there must be a 'possibility that the state law might impose liability on a resident defendant *under the circumstances alleged in the complaint.*'" *Nelson v. Whirlpool Corp.,* 668 F. Supp. 2d 1368, 1378 (S.D. Ala. 2009)(adding emphasis and quoting *Florence v. Crescent Resources, LLC,* 484 F.3d 1293, 1299 (11th Cir. 2007). "Because the circumstances on which [Plaintiffs] rely are not alleged in the complaint, they are irrelevant to the fraudulent joinder analysis." *Id.*

Plaintiffs indicate they intend to seek leave to amend their complaint with regard to the claims against Lockhart. Even if Plaintiffs were permitted to do so, and a claim for wantonness was alleged, the Court's determination does not change. The Court must make its determination based on the claims asserted as of the date of removal. *See e.g. Howard Griggs Trucking, Inc. v. Am. Cent. Ins. Co.,* 894 F. Supp. 1503, 1507 (M.D. Ala. 1995)(" The court agrees with [the Defendant] that the propriety of removal should be considered based upon the pleadings as of the date of removal. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir.1989) (*citing Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939)). In other words, the court will confine its analysis to the fraud claims, which are the only claims asserted against [Defendants] as of the date of removal, and will not examine the negligence and wanton misconduct counts added in the April 13, 1995 amended complaint."). *See also Nelson v. Whirlpool Corp.,* 727 F.

Supp. 2d 1294, 1304 (S.D. Ala. 2010)("Allowing a post-removal amendment to eliminate jurisdiction that existed at the time of removal would also nullify the well-established rule that '[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal....' *Legg,* 428 F.3d at 1322 (internal quotes omitted). That rule prevents a plaintiff from avoiding a fraudulent joinder determination (and thus securing remand) by amending the complaint, before a ruling on the fraudulent joinder issue, to insert a previously excluded viable claim. But the rule would be rendered pointless if a plaintiff could simply wait until after a fraudulent joinder determination, then make the same amendment and thereby secure remand.").

## CONCLUSION

Because Defendants have shown that the Alabama citizen defendant (Lockhart) has been fraudulently joined, the Court must disregard his citizenship for purposes of determining jurisdiction. Therefore, because parties are completely diverse, removal was proper, and this Court has subject matter jurisdiction under § 1332. It is accordingly **RECOMMENDED** that the Motion to Remand (Doc. 14) be **DENIED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** and **ORDERED** this **24th** day of **January 2018**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**